UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:14CR2(JBA) |
| | : | |
| v. | : | **UNDER SEAL** |
| | : | |
| THOMAS PROVENZANO | : | November 24, 2014 |

GOVERNMENT'S SENTENCING MEMO

The United States of America ("United States") respectfully submits this memorandum in aid of sentencing, which is presently scheduled for Monday, December 1, 2014, at 3:00 p.m. In sum, as explained below, the United States recommends that the Court impose a sentence at the lower end of the advisory sentencing guidelines range of 33 to 41 months, along with a restitution order, subject to defendant's ability to pay, for the actual losses on the Count One bank fraud, which are presently estimated at about $300,000, and for which the precise figure will be provided at or before sentencing. For reasons stated in the accompanying Motion to Seal, the government also requests that this memorandum be filed and received under seal.

I.    **The Offense Conduct and Charges**

The Government agrees with and adopts the description of the offense conduct as set forth in the PSR at pp. 4-7, ¶¶6-20, and respectfully requests this Court to adopt the factual findings of the PSR.

II.    **The PSR Properly Calculated the Defendant's Guidelines Sentencing Range**

The government agrees with and adopts PSR's calculations at pp. 9-10 and 15-16, ¶¶26-40 and 62-69. Specifically, under USSG section 2B1.1, Count One (bank fraud conspiracy) has a base offense level 7; 12 levels are added for a loss amount between $200,000 and $400,000; two

more are added for obstruction of the investigation of the offense; and three levels are subtracted under section 3E1.1 for acceptance of responsibility, for a total offense level 18.   Under section 2J1.1, Count Two (obstruction of justice conspiracy) has a base offense level 14; and two levels are subtracted for acceptance of responsibility, for a total offense level 12.   Under 2B1.1, Count Three (mail and wire fraud conspiracy) has a base offense level 7; fourteen levels are added for a loss amount of between $400,000 and $1,000,000; two levels are subtracted under section 3B1.2(b) for defendant's minor role in the offense; and three levels are subtracted for acceptance of responsibility, for a total offense level 16.   All three offenses group together under Chapter 3, part D.   For the two fraud counts (Counts One and Three), the base offense level is 7, and the aggregate loss is between $1,000,000 and $2,500,000, adding 16 levels; two levels are added for obstruction of justice under section 3C1.1, note 8; three levels are subtracted for acceptance of responsibility; and two levels are subtracted for minor role under section 3D1.3, note 3, because the estimated loss for Count Three, for which the minor role adjustment applies, accounts for approximately 75% of the grouped loss amount, resulting in a total, grouped offense level of 20.

With a Criminal History Category I, the resulting advisory sentence range is 33 to 41 months of imprisonment; the fine range is $7,500 to $75,000; and the supervised release term to follow any term of imprisonment is two years to five years.

### III.     A Sentence of at the Low End of the Advisory Sentencing Range of 33 to 41 Months is Appropriate, Fair, and Accomplishes the Purposes of 18 U.S.C. § 3553(a) .

Under *United States v. Booker*, 543 U.S. 220 (2005), as elaborated by *United States v. Crosby*, 397 F.3d 103, (2d Cir. 2005), the Courts are directed first to determine the applicable sentencing guidelines range, then consider whether a departure from that Guidelines range is appropriate, and finally, assess the Guidelines range "along with all of the factors listed in [Title

18] section 3553(a)" to determine the sentence to impose. *Crosby* at 112-13.   "[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

The factors to consider under 18 U.S.C. § 3553(a) included: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims.

1.    Nature and circumstances of the offense, and history and characteristics of the defendant

The offenses in this case are very serious.   The fraudulent acts in the Count One bank fraud conspiracy were blatant and highly consequential.   They resulted in the issuance of a nearly million dollar mortgage from a federally insured bank, to a borrower – the defendant – who did not remotely have the means to pay it back; and it followed directly from the initial, 2005 fraudulent mortgage application that resulted in the leading co-conspirator's paying off his several debts on the property while walking away with over $500,000 cash.   The obstructive conduct in the Count Two conspiracy was also blatantly false, and was specifically designed to try to cover up the

- 3 -

original, November 2005 loan fraud that began this cascade of events.    Finally, the fraudulent title insurance scheme of Count Three, while fortunately not successful, again involved a series of blatant misrepresentations, in an effort to defraud a title insurance company of nearly a million dollars.

This is one case where the conclusion is inescapable that, at the time of the crimes, the defendant clearly must have known better than to do what he did.    The scale of the misrepresentations in the mortgage applications (stated annual income of over $330,000 versus actual annual income of below $50,000); and the blatant falsity of the proposed fraudulent title search (omitting one or more liens totaling over $490,000), are alone sufficient to warrant that conclusion.    But the conclusion is rendered especially salient here, owing to the defendant's having previously worked for six years as a manager and then an officer of a bank.    See PSR at 14, ¶59.

On the other side of the balance are four factors specific to the defendant.    First, his roles in the first and third Counts were clearly subordinate to that of the individual identified as "Co-Conspirator 1," who has since been publicly indicted and identified by name as Ryan Geddes. Geddes was the effective owner of the 27 Palmer Road property who used defendant Provenzano as a straw buyer, both to shield the property from Geddes's creditors, and to extract cash from the property by means of the fraudulent mortgages.    Clearly, in the first, fraudulent mortgage application and straw sale in November 2005, Provenzano obtained plenty of financial benefit, both by avoiding having to pay the approximately $249,000 down payment due and owing, and then receiving about $106,000 in payback from Geddes just days after the straw sale.    It is nonetheless also true that Geddes took the lion's share of the benefits from the fraud, in that

- 4 -

Geddes, not Provenzano, retained occupancy of the property, and the new mortgage paid off more than $250,000 of Geddes's mortgages and other debts on the property, while paying Geddes an additional $500,000 cash.   Somewhat analogously, the Count Three title insurance fraud conspiracy was engineered by Geddes from the moment Provenzano gave Geddes the idea of arranging such a scheme; and Provenzano's active participation in the overt acts ended with the January 15, 2010 title search of the subject property.   Geddes thereafter was the one who selected and deleted the more than $990,000 in liens to be left off the title search provided to the insurance company, and Geddes arranged the straw sale of the property that generated the issuance of the title insurance policy.

Second, Provenzano is the only one of the several conspirators in Geddes's string of fraud schemes who elected to accept responsibility and enter a guilty plea before an indictment was returned.   In the recently returned indictment that includes the same crimes to which Provenzano pled guilty, Geddes and three other co-conspirators have been charged and identified.   See United States v. Ryan Geddes et al., 3:14CR228(RNC).

Related to Provenzano's electing to enter a plea is Provenzano's having offered to testify for the government both at the Grand Jury and, if needed, trail.   Although the government elected not to subpoena the defendant before the Grand Jury, the government is mindful that Provenzano might be called as a trial witness.

Finally, the government recognizes that the defendant has no prior criminal history, and as set forth in the PSR, appears to have pursued and maintained gainful employment throughout his adult life, and has made consistent efforts to provide for his family over those years.

In sum, the countervailing factors noted above weigh in favor of a sentence at the low end of the advisory sentencing guidelines range.

2.      Need for sentence to promote respect for law, specific & general deterrence, to protect the public, and provide defendant with needed training, care, and correctional treatment

The government regards the primary but not exclusive purpose of the sentence as general deterrence, to discourage others tempted to engage in fraudulent financial activity, especially in the pervasive and costly realm of mortgage frauds.   A shorter sentence is most likely adequate for purposes of specifically deterring defendant Provenzano from ever re-offending; but recent years' history suggests that mortgage frauds have been for some time substantially under-deterred, both locally and nationally.   This is the principal reason for the government's recommending a sentence within, albeit at the low end, of the advisory guidelines range.

3 & 4.   The kinds of sentences available / The sentencing range set forth in the guidelines

The defendant has been convicted of a Class A felony.   See 18 U.S.C. §§ 3559, 3561(a)(1); U.S.S.G. § 5B1.1(b)(1).   The statutory maximum sentence is 30 years.   A term of probation is not authorized by the Guidelines.   Community confinement is not available given the defendant's Guidelines exposure as calculated in the PSR.   Accordingly, and for the reasons discussed above, a sentence within, albeit at the low end, of the advisory sentencing guidelines range is appropriate.

5.      Policy statements issued by the Sentencing Commission

Government counsel is not aware of any policy statement by the Sentencing Commission that applies to this case.

- 6 -

6.      <u>The need to avoid unwarranted sentencing disparities</u>

Given the multiplicity of fraud schemes in which the defendant participated, and the actual, intended losses of those schemes, the government regards this case as one that lands well within the "heartland" of financial fraud cases, and hence one in which a guidelines range sentence would not present unwarranted disparities.

7.      <u>The need to provide restitution to victims</u>

Subject to the defendant's ability to pay, the government also requests a restitution order for the actual loss on the Count One bank fraud, that is, the 27 Palmer Road property that went into foreclosure.   That loss is presently estimated at about $300,000; the government will provide the precise loss figure at or before sentencing.

<u>CONCLUSION</u>

For all of the foregoing reasons, the government respectfully recommends that the Court impose a sentence at the low end of the advisory sentencing guidelines range, along with a restitution order, subject to defendant's ability to pay, for the actual fraud loss on the Count One bank fraud.  The government also requests that this memorandum by filed and received under seal, for the reasons stated in the accompanying Motion to Seal.

Respectfully submitted

DEIRDRE M. DALY
UNITED STATES ATTORNEY

HENRY K. KOPEL
ASSISTANT UNITED STATES ATTORNEY
Fed. Bar No. ct24829
157 Church Street, 25th Floor
New Haven, CT    06510
(203) 821-3824

- 8 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 24, 2014, I filed a copy of foregoing sentencing memorandum and caused copies of same to be served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.  Copies of the foregoing also have been sent to counsel for the defendant, Bruce P. Bendish, Esq., by E-mail at goodbend@aol.com.

Assistant U.S. Attorney